## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:25-cr-490 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| VEDO MCCLAIN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

On September 30, 2025, an indictment issued charging defendant Vedo McClain ("defendant" or "McClain") with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. No. 1 (Indictment).) Now before the Court is McClain's motion to suppress evidence he maintains was obtained by law enforcement officers as a result of "the [d]efendant's illegal detention and arrest in violation of the Fourth Amendment to the United States Constitution." (Doc. No. 12 (Motion), at 1.)[1] Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 13 (Response).) The Court conducted an evidentiary hearing on the motion on January 21, 2026; at the conclusion of the hearing, the Court took the matter under advisement. For the reasons that follow, the motion to suppress is **DENIED.**

## I.      BACKGROUND

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Three witnesses testified at the evidentiary hearing: Supervising Agent Kevin Cesaratto ("Agent Cesaratto"), Agent Kevin Piazza ("Agent Piazza"), and defendant McClain.

### A.  Testimony of Agents Kevin Cesaratto and Kevin Piazza

Agents Cesaratto and Piazza are agents with the Ohio Investigative Unit ("OIU") and have extensive training and experience in the use and identification of firearms. Agent Cesaratto, who is also a task force officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, has over 11 years of experience with OIU, including almost three years as a supervisor. He has instructed on the detection of firearms and participated in hundreds of illegal firearms cases, many of which involved the identification of armed offenders. Agent Piazza has been with OIU for over 30 years. For the past six years, Agent Piazza has worked violent crime details targeting crimes involving weapons, narcotics, prostitution, and trafficking. During this period, he has been involved with at least one hundred violent crime reduction details involving weapons and violent crimes occurring at premises.

On the night of November 22, 2024, at approximately 7:10 p.m., Agents Cesaratto and Piazza were part of an OIU team surveilling Mr. C's liquor store (formally known as Shaw Liquor) located at 12615 Shaw Road in Cleveland, Ohio. The team was looking for any potential criminal activity, including weapons offenses, drug trafficking, underage drinking, and open container violations. Agent Cesaratto described Mr. C's as a "very high crime location" where crimes involving illegal firearms possession and gun violence were frequent. From 2021 to 2025, OIU agents made over one hundred arrests at Mr. C's, many of which involved the offense of having weapons under disability. (Doc. No. 14-1 (Govt. Ex. 2 (Crime Log)).)

Equipped with binoculars, Agents Cesaratto and Piazza were conducting surveillance in an unmarked police vehicle parked on the north side of Mr. C's. Agent Cesaratto sat in the driver's seat and Agent Piazza sat in the passenger's seat. Posted at the entrance of Mr. C's was a conspicuous notice stating that it is illegal to carry a firearm onto the store's premises. (Doc. No. 14 (Govt. Ex. 1 (Photo of Sign)).)

Although the weather was cold and lightly raining off and on, the walkway in front of the liquor store and the parking lot were brightly lit with LED lights, and the agents could see down the sidewalk in front of the entrance of the liquor store, including the area near the entrance underneath the building's overhang.

Upon their arrival, both agents saw McClain smoking outside Mr. C's. He was wearing an unzipped Tommy Hilfiger jacket. Agents Cesaratto and Piazza noticed the beige grip and extended magazine of a firearm (later identified to be a Sig Sauer P320) protruding from McClain's inside left jacket pocket. The barrel of the firearm appeared to point downward into the jacket pocket. Agent Cesaratto testified that he was very familiar with the firearm he saw in McClain's jacket as he himself carries a firearm of the same make and model.

The agents observed McClain smoking outside for several minutes with the firearm visible in his jacket. They testified that they did not immediately approach him because Ohio is a constitutional carry state, and a person may carry a concealed firearm without needing a license. Therefore, merely standing outside an establishment with a firearm is not an arrestable offense. But if an armed individual enters a store bearing signage prohibiting patrons from entering with firearms, that person has committed a criminal trespass under Ohio law.

3

Upon finishing smoking, the agents observed McClain walk into Mr. C's with the firearm in his jacket pocket, thereby committing a criminal trespass.

Once McClain had entered Mr. C's, Agent Cesaratto made the decision to arrest him. Agents Cesaratto and Piazza, who had advised the other OIU units through radio that McClain had a firearm on his person, proceeded to coordinate with the surrounding OIU agents to stop McClain once he exited Mr. C's. They explained that they arrest subjects once they exit the store and are away from other patrons for officer and public safety

When McClain exited Mr. C's, the agents in the two or three other OIU units, who were in the parking lot or close by, turned on their lights and sirens and exited their vehicles. They were wearing tactical vests clearly marked with police placards. As they approached McClain, they clearly announced themselves as police officers. Agent Piazza also jumped out of his vehicle to assist, while Agent Cesaratto was in the process of maneuvering his vehicle to block any escape.

Upon seeing the approaching OIU agents, McClain fled and the agents initiated pursuit. After a short chase across the parking lot, McClain was tased by OIU agents, he fell to the ground, and he was handcuffed.

Agent Piazza approached McClain as he was on the ground. McClain's jacket was zipped up. (Doc. No. 14-4 (Def. Ex. B (Photo)), and Agent Piazza immediately unzipped McClain's jacket to recover the firearm from McClain's left chest pocket. The recovered firearm was revealed to be a loaded Sig Sauer P320 in the same location previously observed by Agents Cesaratto and Piazza, exactly matching the agents' initial descriptions. (Doc. No. 14-2 (Govt. Ex. 3 (Photo of the Firearm)).)

4

By the time Agent Cesaratto approached McClain, he was already secured on the ground. Agent Cesaratto observed Agent Piazza unzipping McClain's jacket, revealing the firearm. Agent Cesaratto recounted that the weight of the firearm opened the inside pocket up. He testified that the firearm was positioned and located similarly to how he previously saw the firearm before McClain had entered the store. (*Id.*) Agent Piazza then secured the firearm and ammunition.

On cross-examination, defense counsel pressed each agent as to why they had not sought to obtain security camera footage from Mr. C's. Agent Cesaratto explained that in high crime areas, there is a stigma associated with assisting law enforcement. To avoid subjecting them to possible retaliation, OIU typically refrains from involving store owners in their investigations. Agent Piazza gave similar testimony, explaining that many establishments in such areas are reluctant to cooperate with law enforcement. And, in any event, Agent Piazza stated that he was confident that their independent investigation had uncovered sufficient evidence to support the arrest.

**B.  Testimony of Vedo McClain**

McClain offered a very different account of the facts leading up to his arrest. He testified that on the night of November 22, 2024, he drove to Mr. C's from his nearby home. Because the weather was cold, his jacket was zipped up. He arrived at Mr. C's and walked directly into the store without stopping. He denied smoking outside Mr. C's, testifying that he does not smoke. Inside the store, McClain purchased a bottle of alcohol. He then exited the store and, rather than head back to his vehicle, he began to walk toward a bar across the street to meet up with a friend.

McClain testified that, as he exited the store, he noticed a truck pull up in front of him and heard a siren. He recalled that he became "paranoid," fearing for his safety because the liquor store

5

was in the inner city, and decided to run. He remembered being tased several times within seconds and he fell to the ground. He also remembered an OIU agent flipping him over, unzipping his jacket, and recovering the firearm.

## II.    LAW GOVERNING WARRANTLESS ENCOUNTERS

The Fourth Amendment protects "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment proscribes warrantless searches and seizures, *id.*, but because its "ultimate touchstone is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) (citations omitted).

Police may engage in a warrantless encounter with a citizen under three circumstances: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop (based on *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)), predicated on reasonable suspicion; and (3) arrests based on probable cause. *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citations omitted). McClain's motion to suppress only involves the third type of warrantless encounter.

"An 'arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.'" *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988)). "To determine whether probable cause existed, [the Court] ask[s]

whether at the time of the arrest an officer knows of facts and circumstances 'sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *McCray v. Metrish*, 232 F. App'x 469, 480 (6th Cir. 2007) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). "Probable cause may be supported by 'less than prima facie proof but more than mere suspicion.'" *King v. City of Rockford, Michigan*, 97 F.4th 379, 391 (6th Cir. 2024) (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)).

The Court finds the accounts of Agents Cesaratto and Piazza of the events leading up to the arrest and recovery of the firearm to be credible. Each agent's testimony largely corroborated the other. Both agents testified consistently regarding: (i) the weather and lighting conditions that evening; (ii) the location of the agents and the manner in which they conducted their surveillance; (iii) the clothing McClain was wearing; (iv) the location where McClain was smoking near the entrance to the liquor store; (v) the model, make, and color of the firearm; (vi) the location of the firearm in McClain's inside left jacket pocket; and (vii) the way the grip and extended magazine of the firearm protruded from McClain's pocket. There is also no dispute that Agent Piazza immediately recovered the firearm from McClain's inside left jacket pocket once he was apprehended, lending further support for the conclusion that Agents Cesaratto and Piazza saw the firearm before McClain entered the store.[2] Both agents also offered similar explanations as to why they did not approach McClain as he was smoking outside and why they had not sought the security camera footage from Mr. C's.

---

[2] McClain conceded on the stand that, while the firearm was immediately recovered from his jacket, the agents waited to conduct a full search of his person.

The Court found that McClain's testimony was less than credible and stood in stark contrast to the clear, cogent, and consistent testimony given by Agents Cesaratto and Piazza. Putting aside McClain's obvious self-interest, McClain was evasive in responding to questioning and had difficulty remembering the details leading up to his arrest. There were also several inconsistencies. For instance, while conceding that he heard the police sirens, he maintained that he had no idea that the individuals approaching him were police. And even though he claimed that he carried the firearm for his own protection and was fearful for his safety, he made no attempt to reach for his firearm or otherwise protect himself. His only explanation for his inconsistent behavior was that he was "paranoid" and that it was hard to remember the details of his own arrest because it occurred more than one year ago. Collectively, these inconsistencies cast doubt on the overall reliability of McClain's testimony.

Based on the credible testimony of the agents, the Court concludes that the agents had probable cause to arrest McClain. The agents personally observed McClain standing outside Mr. C's with a firearm protruding from his inside jacket pocket while it was unzipped. While McClain was smoking, Agents Cesaratto and Piazza waited to see if he would enter Mr. C's. They understood that McClain's possession of a firearm outside of Mr. C's, in and of itself, did not provide them with probable cause to make an arrest. The circumstances changed, however, once McClain walked into Mr. C's with the firearm on his person in violation of the conspicuous signage prohibiting patrons from entering with firearms. In observing this, Agents Cesaratto and Piazza saw McClain engage in criminal trespass in violation of Ohio Rev. Code § 2923.126(C)(3)(1) (declaring that a person who "knowingly violates a posted prohibition [of carrying firearms or

concealed firearms on or onto a land or premises] is guilty of criminal trespass in violation of division (A)(4) of section 2911.21 of the Revised Code and is guilty of a misdemeanor of the fourth degree").

It is well settled that an officer may arrest an individual for a crime committed in his presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000) ("Where probable cause exists, '[a] police officer is permitted to make an arrest without a warrant for a misdemeanor committed in his presence.'" (quoting *United States v. Smith,* 73 F.3d 1414, 1416 (6th Cir. 1996) (alteration in original))); *see also United States v. McKnight*, 385 F. App'x 547, 549 (6th Cir. 2010) ("[O]fficers may arrest—seize—an individual in public when they have probable cause to believe an individual committed a crime."). Having established probable cause, the agents were entitled to arrest McClain for criminal trespass. *See Strickland*, 144 F.3d at 415. In the course of the arrest, they properly recovered and secured the firearm from McClain's inside left jacket pocket that they had previously observed.

McClain resists this conclusion. At the hearing, McClain testified that he believed his arrest was unlawful because the agents did not follow appropriate procedure when they arrested him. The crux of McClain's challenge is that he did not personally hear the agents say that he had a firearm, nor did the body camera footage capture any of the agents alerting one another that

9

McClain was armed.[3] McClain argues that this demonstrates that the firearm was discovered only *after* the arrest.

This argument is unpersuasive. The very reason for stopping McClain was that Agents Cesaratto and Piazza had observed McClain in possession of a firearm while he entered Mr. C's—an establishment that prohibited firearms—thereby committing criminal trespass. Agent Cesaratto testified that, upon seeing McClain enter the store with the firearm, he and Agent Piazza coordinated with the other members of the team to arrest McClain once he exited the store. Agents Cesaratto and Piazza had also provided their team with a detailed description of the firearm and its location in McClain's inside left jacket pocket. All these preparatory conversations would have occurred before McClain exited the store. The agents' preparatory conversations obviated the need for them to warn one another that McClain possessed a firearm as they approached to effectuate the arrest.

Regardless, the Court finds that Agents Cesaratto and Piazza observed McClain commit criminal trespass when he entered Mr. C's with a firearm despite signage clearly prohibiting firearms. Because the agents witnessed McClain commit a crime, they had probable cause to arrest McClain without a warrant. *See, e.g., United States v. Dowell*, No. 1:23-cr-400, 2024 WL 3675817, at *4 (N.D. Ohio Aug. 6, 2024) (denying defendant's motion to suppress because law enforcement had probable cause to engage in a warrantless encounter with defendant after observing him exiting

---

[3] The agents credibly testified that they activated their body cameras only after McClain had committed the violation. Therefore, the body camera footage did not capture the agents' observations and conversations leading up to McClain exiting the store.

a liquor store with a firearm). Accordingly, the search and seizure comported with the requirements of the Fourth Amendment.

## IV.    CONCLUSION

The record establishes that OIU agents arrested McClain with probable cause on November 22, 2024, thereby giving the agents a sufficient basis to recover the firearm from McClain's person. Accordingly, McClain's motion to suppress is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 17, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**